# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **GENE AND FRANCES CANNON,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 3:06-0804** |
| **v.** | ) | **Judge Trauger** |
| | ) | |
| **GUNNALLEN FINANCIAL, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the court is the Plaintiffs' Motion to Certify Class (Docket No. 91) to which the defendant GunnAllen Financial, Inc. ("GunnAllen"), has responded (Docket No. 111), the plaintiffs have replied (Docket No. 119), and the defendant has filed a surreply (Docket No. 127.) Additionally, the defendant has filed a motion to strike four of the witness declarations that the plaintiffs filed in support of their class certification motion. (Docket No. 107.) The plaintiffs have responded to the motion to strike. (Docket No. 120.) For the reasons discussed herein, the plaintiffs' motion to certify the proposed class will be denied, and the defendant's motion to strike will be denied as moot.

## FACTS AND PROCEDURAL HISTORY

As noted in the court's previous opinions (Docket Nos. 48, 63, and 78), the claims in this case stem from the plaintiffs' dealings with P. Michael Tansil, a stockbroker, who, when the plaintiffs first encountered him, was a registered representative of GunnAllen. (*See* Docket No.

15 at 3.) In the section of their Amended Complaint that pertains to their class claim, the plaintiffs allege that Tansil conducted trading in the plaintiffs' accounts at a time when he was not legally allowed to do so, *i.e.*, after GunnAllen had fired him. (*See id.* at 4-5, 19.) As such, the plaintiffs claim, they are entitled to rescissionary damages with respect to each of the securities transactions that Tansil effected in their accounts from the time of his termination onward. (*See id.* at 19.) The plaintiffs originally brought their claims against not only GunnAllen, but also (1) GunnAllen Holdings, the corporation that owns GunnAllen; (2) Richard A. Frueh, the Chairman and CEO of GunnAllen; (3) Marc Ellis, GunnAllen's Chief Compliance Officer since July 2005; (4) Richard Nummi, the Chief Compliance Officer of GunnAllen until July 2005; and (5) Stephen I. Saunders, who was Tansil's direct supervisor from January 2002 until August 2005. (*See id.* at 2-3.)

On September 18, 2006, the defendants moved to dismiss all of the plaintiffs' claims and to compel arbitration on those claims under the plaintiffs' arbitration agreements. (*See* Docket No. 22 at 1.) On January 22, 2007, this court found that the plaintiffs' individual claims were generally appropriate for arbitration and stayed the defendants' Motion to Dismiss and to Compel Arbitration pending the parties' submission of additional information. (*See* Docket No. 48 at 12.) The court also stayed the plaintiffs' class claim pending the resolution of the non-class claims in arbitration. (*See id.*)

On February 5, 2007, the parties filed a Stipulation Concerning Arbitration that stated, among other things, their agreement as to which of the plaintiffs' claims should be arbitrated and which defendants would participate in the arbitration. (*See* Docket No. 50 at 2.) The court

subsequently ordered that, under this stipulation, each of the plaintiffs' individual claims would be compelled to arbitration before the National Association of Securities Dealers.  (*See* Docket No. 52 at 2.)  As recognized by both parties and reflected in the court's Order, however, the plaintiffs' class claims were to remain in this court.  (*See id*.)

The plaintiffs also moved the court to reconsider its stay of their class claims or to allow the three plaintiffs without individual claims to proceed to a separate trial of their class claims. (*See* Docket No. 51 at 2.)  The court denied that motion on March 9, 2007.  (*See* Docket No. 64 at 1.)

On May 29, 2007, the defendants moved to dismiss from this court the plaintiffs' class claims.  (Docket No. 74.)  They asserted both that this court lacked jurisdiction over two of the defendants and that the plaintiffs' class claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6).  (*See id.* at 2.)  This court granted the defendants' motion to dismiss except as to the plaintiffs' class claim alleging that GunnAllen is liable for Tansil's primary violations of the Tennessee Security Act ("TSA") under the doctrine of apparent authority.  (Docket 78 at 23.)

On January 28, 2008, the plaintiffs filed a motion to certify a class consisting of "all persons and entities that had accounts with GunnAllen Financial, Inc. that, prior to August 26, 2005, were handled by Michael Tansil and in which opening trades were made during the period August 27, 2005 to May 17, 2006."  (Docket No. 92 at 2.)  The plaintiffs define an "opening trade" as "a sale of securities to a member of the Plaintiff Class and/or an opening option transaction, whether long or short, made by GunnAllen on behalf of a member of the Plaintiff Class."  (*Id*. at n. 1.)  The class period begins on the day after Tansil was terminated and ends on

the day Tansil's supposed assistant in the illegal trading, Ben Leyhew, resigned from GunnAllen. (*Id*. at n. 2.)  The plaintiffs also moved to have the court certify two subclasses of (a) "[t]hose persons and entities within the Plaintiff Class in whose accounts opening trades were made in put or call options" and (b) "[t]hose persons and entities within the Plaintiff Class in whose accounts opening trades were made in Rydex inverse or bear market funds that move contrary to the general market direction."[1]  (*Id.* at 2.)

As to the propriety of class treatment here generally, the plaintiffs allege there is "a consistent pattern of proof," which would allow the plaintiffs to demonstrate Tansil's primary liability under the TSA and GunnAllen's secondary liability under apparent authority doctrine on a class-wide basis.[2]  (Docket No. 92 at 4.)  The plaintiffs allege that, after he was terminated, Tansil continued to come into his office as before, meet with his "former" clients, and make trades on their accounts.  (*Id.* at 4-6.)  Further, the plaintiffs allege that Tansil treated his actual replacement, Ben Leyhew, as an assistant.  (*Id.*)  The plaintiffs also allege that GunnAllen never informed the proposed class of Tansil's termination, so, to the proposed class, Tansil appeared to be their GunnAllen agent, while he made trades in violation of the TSA.  (*Id.*)

In its response to the plaintiffs' class certification motion, the defendant GunnAllen

---

[1] The plaintiffs have not briefed or otherwise clearly explained why their proposed class should be sub-classed in this manner other than to say these sub-classes have "significant, particularized proof."  (Docket No. 92 at 2.)

[2] For a principal (*i.e.,* GunnAllen) to be liable under an apparent authority theory under Tennessee law, the plaintiff must show that 1) the principal actually or negligently acquiesced in another party's exercise of authority; 2) the plaintiff had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and 3) the plaintiff relied on the apparent authority to his or her detriment.  *See Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 421-22 (Tenn. Ct. App. 2004).

challenged the notion that there is a "consistent pattern of proof" such that the plaintiffs' claim is appropriate for class treatment. (Docket No. 111 at 3-8.) The defendant argues that the plaintiffs' claim is not appropriate for class treatment for two principal reasons. One, the proof necessary to establish Tansil's primary liability under the TSA will have to be individualized because the evidence shows Tansil's interactions with proposed class members varied widely in scope following his termination. (*Id.* at 12-13.) Two, the proof necessary to establish the defendant's secondary liability under the doctrine of apparent authority will also have to be individualized because, to show apparent authority, a plaintiff must show that he had a good faith belief in the apparent authority and relied on it. (*Id.* at 14-15.) The defendant contends these elements of an apparent authority claim can only be proven on an individualized basis. (*Id.*) In support of these arguments, the defendant offers the declarations of four putative class members, along with the deposition testimony of Leyhew, Tansil, and others, to show that the degree of control Tansil exerted over the putative class members' accounts varied widely during the proposed class period, as did the notice various putative class members received of Tansil's departure. (Docket Nos. 112-15; Docket No. 111 Exs. 2-3, 14-37.)

Finally, on March 4, 2008, the defendant moved to strike four of the declarations the plaintiffs submitted in support of their class certification motion. (Docket 107.) The defendant argued that the declarations were irrelevant for purposes of the plaintiffs' class certification motion because the declarations were made by Tansil's former clients who had dismissed their claims in this litigation in conjunction with the arbitration of those claims. (*Id.* at 2.) The plaintiffs responded that the testimony should be considered in conjunction with the plaintiffs'

"obligation to provide the Court with some understanding of the proof that will support the plaintiffs' class action claims."  (Docket No. 120 at 2.)

## ANALYSIS

The principal purpose of class actions is to achieve efficiency and economy of litigation, both with respect to the parties and the courts.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982).  The Supreme Court has observed that, as an exception to the usual rule that litigation is conducted by and on behalf of individual named parties, "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'"  *Id.* at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  The Court directs that, before certifying a class, district courts must conduct a "rigorous analysis" of the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.  *See Falcon*, 457 U.S. at 161.  The Sixth Circuit has stated that district courts have broad discretion in deciding whether to certify a class, but that courts must exercise that discretion within the framework of Rule 23.  *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Although a court considering class certification may not inquire into the merits of the underlying claim, a class action may not be certified merely on the basis of its designation as such in the pleadings.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.  In evaluating whether class certification is appropriate, "it may be necessary for the court to probe behind the pleadings . . . .", as the issues concerning whether it is

6

appropriate to certify a class are often "enmeshed" within the legal and factual considerations raised by the litigation. *Falcon*, 457 U.S. at 160; *see also In re Am. Med. Sys.*, *Inc.*, 75 F.3d at 1079; *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974). Moreover, the party seeking class certification bears the burden of establishing that the requisites are met. *See Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976).

**I.      The plaintiffs have demonstrated that they meet the requirements of Rule 23(a).**

Any party seeking class certification must meet all four prerequisites of Rule 23(a) — numerosity, commonality, typicality, and adequacy of representation — before a class can be certified. *See* Fed. R. Civ. P. 23(a); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. The court will discuss each of these prerequisites in turn.

**A.      The plaintiffs have demonstrated numerosity.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In *Senter,* the Sixth Circuit explained that there is "no specific number below which class action relief is automatically precluded," and that it is the circumstances of the case, not a strict numerical test, that determines impracticability of joinder. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976). Likewise, there is no "automatic cut off point at which the number of plaintiffs makes joinder impractical." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). But, the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy [numerousity]." *Id.* Apart from class size, other case-specific factors that courts should

consider in determining whether joinder is impracticable include: the judicial economy, the geographical dispersion of class members, the ease of identifying putative class members, and the practicality with which individual putative class members could sue on their own. *See* Alba Conte & Herbert Newberg, 1 Newberg on Class Actions § 3:6 (4th ed. 2003) ("Newberg"); *see also Kerns v. Caterpillar, Inc.*, No. 06-01113, 2007 WL 2044092, at *3 (M.D. Tenn. July 12, 2007) (citing Newburg).

Here, the plaintiffs claim that they meet the numerosity requirement because there are 200 to 300 people in the proposed class, *i.e.*, that numerosity is satisfied on numbers alone. (Docket No. 92 at 12; Docket No. 119 at 1.) The defendant correctly argues that some of the other numerosity factors listed above cut against finding the numerosity requirement satisfied here. It appears that, at least during the class period, most of the putative class members lived in the greater Murfreesboro area, and they are therefore not geographically dispersed. (Docket No. 111 at 11.) Also, putative class members would likely remain easily identifiable by the records on file with GunnAllen. (*Id.*)

On balance, however, the plaintiffs are correct that the sheer number of putative class members, combined with other realities, demonstrates that joinder would be impractical. While it might be possible to join all 200 to 300 plaintiffs, it would not be practical or in the interest of judicial economy to do so. Given that the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)," and that the plaintiffs here allege a potential class of between 200 and 300 individuals,

the plaintiffs have demonstrated that numerosity exists. *See Bacon*, 370 F.2d at 570 (noting a class of 800 was "well beyond the point that joinder would be feasible.")

**B.      The plaintiffs have demonstrated commonality.**

In order to establish commonality, the plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Sixth Circuit has characterized the commonality requirement as "qualitative rather than quantitative" and has observed that "[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common." *See In re Am. Med. Sys.*, *Inc.*, 75 F.3d at 1080; *Bacon*, 370 F.3d at 570. This common issue must be one "the resolution of which will advance the litigation." *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

Here, the plaintiffs provide a list of seven supposedly common issues, all of which relate directly to their apparent authority claim. (Docket No. 92 at 13-14.) The defendant argues that, because key issues of primary and secondary liability will have to be proven on an individualized basis, the plaintiffs have failed to demonstrate commonality. (Docket No. 111 at 12-16.) While the defendant raises valid concerns about certifying this proposed class in general, for the purposes of Rule 23(a)(2), this proposed class does satisfy the requirement that all class members have "at least one issue in common." *See In re Am. Med. Sys.*, *Inc.*, 75 F.3d at 1081 (finding no commonality where there was a lack of "proof of commonality of any factual or legal claims").

Here, because everyone in the proposed class was a client of Tansil and continued to hold an account with GunnAllen after Tansil was terminated, there are common questions of law and fact uniting this class. For example, under Tennessee law, the plaintiffs' apparent authority claim

will require that the plaintiffs prove, among other things, that GunnAllen acquiesced in Tansil's show of authority. *See Danny L. Davis Contractors, Inc.*, 157 S.W.3d at 421-22. As the plaintiffs suggest, whether the defendant so acquiesced is an issue of common concern to all class members no matter their individual variations in circumstances. (*See* Docket No. 92 at 14.) Again, the numerous problems with certifying this class under Rule 23(b)(3) will be discussed later, but, for present purposes, Rule 23(a)(2) is satisfied, as the plaintiffs have shown the proposed class shares at least one issue in common.

### C. The plaintiffs have demonstrated typicality.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Together with Rule 23(a)(4)'s requirement that the representative party adequately protect the interests of the proposed class, the typicality requirement focuses on the characteristics of the proposed class representatives. *See* Newberg § 3:13. "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Id.*

Closely following Newburg, the Sixth Circuit has concluded a proposed class representative's claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys. Inc.*, 75 F.3d at 1082. It follows that, in situations where typicality is found, "the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the

class members." *Id.* In *Sprague*, the Sixth Circuit summarized the "premise" of the typicality requirement: "as goes the claim of the named plaintiff, so go the claims of the class." 133 F.3d at 399.

In their brief, the plaintiffs provide little explanation for why they believe the proposed class satisfies the typicality requirement, noting only that "the named plaintiffs' claims [under the TSA] are the same as the claims of class members, except as to the amount of damages." (Docket No. 92 at 15-16.) In challenging that the plaintiffs have established typicality, the defendant hones in on the *Sprague* language "as goes the claim of the named plaintiff, so go the claims of the class." (Docket No. 111 at 16-19.) The defendant argues that the results of the primary liability and apparent authority inquiries might be different as between a class representative and an absent class member, based on the showing each individual could make on whether Tansil committed TSA violations as to her particular account, and whether the individual could show a good faith belief in Tansil's apparent authority and a reliance on that authority. (*Id.*)

The defendant reads the above language in *Sprague* too strictly. The Sixth Circuit recently applied this *Sprague* language and found that, despite variations in the individual circumstances of each class member, where the claims of the class representatives and the proposed class (1) arose from the same "allegedly deceptive" conduct and (2) were premised on the same "allegation," the alignment between the interests of the class representatives and the proposed class was sufficient for the typicality threshold to be satisfied. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561-62 (6th Cir. 2007).

Similarly, for this proposed class, the requirements of typicality are satisfied. The claims of the class representatives and the claims of the proposed class arise from the same allegedly deceptive course of conduct, which is that Tansil continued to manage accounts in violation of the TSA after he was fired. (Docket No. 15 at 5.) Further, the claims of the named plaintiffs and the claims of the proposed class proceed on the basis of the same legal theory, which is that the defendant's acquiescence caused the plaintiffs' belief that Tansil remained the plaintiffs' agent. (*Id.* at 19.) The three class representatives all testified at their depositions that Tansil, not Leyhew, continued to manage their accounts after Tansil was terminated, and they would not have known, based on the conduct of GunnAllen, that Tansil had been fired for many months after the fact. (Docket Nos. 103 at 42-50, 104 at 31-37, and 105 at 37-42.) The interests of the class representatives and the proposed class align, and, by bringing this litigation, the class representatives will necessarily advance the interests of the absent class members. Therefore, the plaintiffs have met their burden of establishing typicality. *See In re Am. Med. Sys. Inc.*, 75 F.3d at 1082.

### D.    The plaintiffs have demonstrated adequate representation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Rule 23(a)(4) inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Beattie*, 511 F.3d at 563. To alleviate these conflict of interest concerns, the plaintiffs must show that (1) the class representatives have common interests with the rest of the class; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Id.*

12

The common interest criterion requires that there be no antagonism or conflict of interest between the class representatives and the other members of the class that they seek to represent. *See In re Am. Med. Sys.*, 75 F.3d at 1083. The second criterion inquires into the competency of counsel. *See id.*

As to the first criterion, the plaintiffs assert that there is no antagonism between the class representatives and the rest of the proposed class because all of the plaintiffs seek to prove the defendants liable for violations of the TSA. (Docket No. 92 at 16.) As to the second criterion, the plaintiffs assert that class counsel has experience in class actions, and the class representatives have filed declarations stating their willingness to proceed on behalf of themselves and the class. (Docket No. 92 at 16-17; Docket Nos. 93-95.) The defendant does not challenge the plaintiffs on either of these points. As no conflict of interest between the class representatives and the proposed class is apparent and the proposed class counsel is well qualified, the plaintiffs have satisfied the requirements of Rule 23(a)(4).

Having found that the plaintiffs have demonstrated the existence of each Rule 23(a) prerequisite, the court now must determine whether the plaintiffs' case also falls within at least one of the subcategories of Rule 23(b). *See In re Am. Med. Sys.*, 75 F.3d at 1079.

## II. The plaintiffs have not demonstrated that their claims are amenable to certification under Rule 23(b)(3).

The plaintiffs suggest that certification of their proposed class is appropriate under Rule 23(b)(3). (*See* Docket No. 92 at 17-25.) The court finds that it is not. To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common questions must "predominate over any questions affecting only individual members";

and (2) class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)).[3] Here, the clear predominance of individual issues in the claims of this proposed class, along with the predictable management problems and inefficiencies stemming from any class treatment, makes it clear that this proposed class should not be certified under Rule 23(b)(3).

### A. The plaintiffs have not demonstrated that common questions predominate over individual issues.

Rule 23(b)(3) parallels the Rule 23(a)(2) commonality requirement in that both rules require that common questions exist, "but [Rule 23](b)(3) contains the more stringent requirement that common issues predominate over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (internal citation omitted); *see also Amchem Prods., Inc.*, 521 U.S. at 623-24 (finding that the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement). The plaintiff must show that the issues that are subject to generalized proof predominate over those issues subject to individualized proof. *Beattie*, 511 F.3d at 564. Therefore, where the circumstances of the case indicate that a substantial part of each plaintiff's claim will depend on proof unique to the individual, common issues will not predominate and certification under Rule 23(b)(3) will be inappropriate. *In re Am. Med. Sys., Inc.*, 75 F.3d at

---

[3]Rule 23(b)(3) includes a non-exhaustive list of factors that are pertinent to a court's examination of the predominance and superiority prerequisites: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

1084.  In that situation, "the economies of scale achieved by class treatment are more than offset by the individualization of numerous issues relevant only to a particular plaintiff."  *Id.*

Here, the plaintiffs argue that the issues that depend on common proof predominate over the issues that depend on individualized proof.  As to the issue of primary liability under the TSA, the plaintiffs assert that this case  "involves a unified and continuing course of conduct in which Michael Tansil indirectly effectuated trades in plaintiffs' accounts [violating the TSA] ... Except for the computation of individual damages [for the TSA violation] ... there are no non-common issues."  (Docket No. 92 at 19.)  On the issue of apparent authority, the plaintiffs assert that the required showing that the class member had a good faith belief in Tansil's authority and relied on that authority can be made class-wide by inference.  The plaintiffs argue that it is reasonable to assume that "no class member would have allowed Mr. Tansil to continue to handle his or her investments if the investor had known that Mr. Tansil had been terminated by GunnAllen," and, therefore, one could infer class-wide that "any class member whose account Mr. Tansil continued to handle had no knowledge of the termination."  (*Id.* at 20.)

The defendant convincingly argues that, based on the claims offered here, common issues do not predominate over individual ones.  First, as the defendant correctly asserts, the establishment of primary liability under the TSA is not suitable for class treatment on these facts. (Docket No. 111 at 20.)  In their Complaint, the plaintiffs vaguely allege that Tansil "directly or indirectly initiated trades in the GunnAllen financial accounts of plaintiffs and members of the plaintiff class."  (Docket No. 15 at 19.)  Accepting this point as true, the evidence the parties provided in conjunction with class certification briefing shows Tansil's involvement with the

accounts of members of the proposed class varied widely following his termination. Some proposed class members testified that Tansil had virtually no involvement with their accounts following his termination and that they knew within, at most, a few weeks of the event that Tansil had been terminated. (Docket Nos. 112-15.) On the other hand, the named plaintiffs testified that Tansil continued to "manage" their accounts and that they had no knowledge of Tansil's termination until many months after the fact. (Docket Nos. 93-95; Docket Nos. 103 at 42-50, 104 at 31-37, and 105 at 37-42.)

Further, Ben Leyhew, Tansil's supposed replacement, provided inconsistent deposition testimony that also demonstrates that the TSA violations in this case could only be effectively proven on an individualized basis. First, Leyhew testified that, after Tansil was fired, Tansil continued to come into the office, meet with clients (putative class members), and direct trades for them. (Docket No. 102 at 41, 113.) Elsewhere in his deposition, however, Leyhew testified that Leyhew made the final decisions on all trades, and Tansil only provided background information on a client or a type of transaction. (*Id*. at 56, 108.) When asked whether a majority of the opening trades during the class period were directed by Tansil, Leyhew replied that "everybody is different." (*Id.* at 71.) Therefore, the defendant appears correct in its assertion that Tansil's primary liability can only be established on a trade-by-trade basis, *i.e.*, by individualized proof. (Docket No. 111 at 21.) Plainly, this cuts very strongly against certifying this proposed class under Rule 23(b)(3).

Similarly, on the issue of apparent authority, the defendant is correct that individualized proof will be required to make the proper showing. As discussed above, to establish that Tansil

had apparent authority for his allegedly illegal trades, the plaintiffs must show that (1) the defendant actually or negligently acquiesced in Tansil's exercise of authority; (2) the plaintiffs had knowledge of the facts and a good faith belief that Tansil possessed such authority; and (3) the plaintiffs relied on Tansil's apparent authority to their detriment. *See Danny L. Davis Contractors, Inc.*, 157 S.W. 3d at 421-22. As the first prong of the apparent authority test focuses on the actions of the principal, not the proposed class or its members, the acquiescence showing could likely be made on a class-wide basis. *See Star Transp. Inc. v. CSIR Enters.*, 409 F. Supp. 2d 939, 949 (M.D. Tenn. 2006). The issues of good faith belief and reliance identified in the second and third prongs of the test, however, are issues that will require individualized proof.

First, whether a class member retained a good faith belief in Tansil's authority over his or her account can only be determined by the facts and circumstances surrounding the individual plaintiff. A look at the contrasting declarations and deposition testimony of the various members of the proposed class confirms this. For example, in their depositions, the three proposed class representatives all testified that, based on their post-termination interactions with the relevant parties (GunnAllen, Leyhew, Tansil, etc.), there was no reason to believe that Tansil was not their agent. (Docket Nos. 104 at 36, 103 at 44, and 105 at 38.) On the other hand, the defendant has produced declarations from four potential class members that indicate that those potential class members knew almost immediately that Leyhew had replaced Tansil as their agent. (Docket Nos. 112-15.) Therefore, the nature of the claim and the nature of the facts in this case show that good faith belief in Tansil's authority can only be established on a plaintiff-by-plaintiff basis because each plaintiff's interactions with Tansil, Leyhew, and GunnAllen appears to have been different.

This point, of course, cuts very strongly against certifying this class under Rule 23(b)(3). *In re Am. Med. Sys., Inc*., 75 F.3d at 1084 (noting the inappropriateness of certifying a class under Rule 23(b)(3) where the "factual and legal issues ... differ dramatically from individual to individual [and] ... each receives different information.")

Reliance is also not subject to class-wide proof here. *See Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000) (holding a proposed class was not suitable for certification under Rule 23(b)(3) where reliance was at "the factual core" of the case, because any resolution of the reliance issues would necessarily involve "an individual assessment of what documents the [plaintiff] reviewed and in what manner [and] what representations Defendants made to each [plaintiff] ..."). The plaintiffs do cite three cases in which a court found reliance could be proven on a class-wide basis. (Docket No. 92 at 21.) But these cases only stand for the proposition that, in some circumstances, reliance can be presumed class-wide if reliance can be clearly inferred from the facts. *See e.g., Peterson v. H & R Block Tax Servs., Inc.*, 174 F.R.D. 78, 84-85 (N.D. Ill. 1997) (finding reliance could be proven class-wide where class members all paid the defendant a fee for an additional tax service for which they were ineligible. The court found reliance was amenable to class-wide proof on the assumption that a class of people would not pay for such a service unless the defendant caused them to believe they were eligible for it.). The set of facts here, however, does not permit the presumption of reliance, *i.e.*, the presumption that the entire proposed class kept their accounts with the defendant after Tansil's termination because they believed Tansil was their agent. The defendants, in fact, have produced the testimony of four potential class members, all of whom say they kept their accounts open with the defendant even

after they knew Tansil left.  (Docket Nos. 112-15.)  While it is certainly possible that some putative class members kept their accounts open with the defendant in reliance on an erroneous, good faith belief that Tansil was still their agent, this showing must be made on an individual basis.

An examination of the plaintiffs' claims reveals that, despite their strenuous assertions to the contrary, common issues do not predominate over individual issues in this case.  On the key issues of primary liability, good faith belief, and reliance, all of which are plainly central to the plaintiffs' case, the showing will have to be based on individualized, not class-wide, proof. Therefore, this proposed class is not suitable for certification under Rule 23(b)(3).

**B.      The plaintiffs have not demonstrated that class treatment is superior to other methods that are available for resolving this controversy.**

In addition to failing to show that common issues predominate in this litigation, the plaintiffs have failed to show that class treatment is superior to other methods of resolving this controversy.   As noted above, Rule 23(b)(3) provides a non-exhaustive list of factors that a court should consider in making a determination under this part of rule, including the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc.*, 521 U.S. at 615-16.

The obvious difficulties and inefficiencies in managing this proposed class action make it clear that class treatment is not superior to other potential methods of resolving this controversy. Despite hopefully asserting that there is a "consistent pattern of proof" and that good faith belief and reliance may be proven by inference, the plaintiffs also ultimately concede that the primary liability issues, along with the secondary liability issues of good faith belief and reliance, might

19

require individualized proof. (Docket No. 92 at 23-24; Docket No. 119 at 7-8.) The plaintiffs offer a series of ultimately ineffective ideas to try and overcome these problems, including suggesting (1) that the claims of the named plaintiffs be tried first, with any general conclusions about the defendant's notifications to the class about Tansil's departure made applicable to the class as a whole; (2) that Leyhew identify from memory the accounts with which Tansil was inappropriately involved, and (3) that the individual plaintiffs submit affidavits to establish good faith belief and reliance. (*Id.*) Of course, the plaintiffs concede, the defendant would then submit rebuttal proof from its own witnesses on these issues, which would create a question of fact and the need for a hearing on the defendant's liability with respect to each plaintiff. (*Id.*; Docket No. 127 at. 7.)[4]

All of the plaintiffs' proposals, of course, create the specter of numerous mini-trials, where each plaintiff asserts his or her own proof on primary liability, good faith belief, and reliance, and the defendant responds with counter evidence. Where class treatment would result in numerous such mini-trials, courts have concluded that class treatment is not a superior method of resolving the claims at issue. *See e.g. Bradberry v. John Hancock Mut. Ins. Co.*, 222 F.R.D. 568, 573 (W.D. Tenn. 2004) ("fact intensive, individualized inquiry – commonly referred to as 'mini trials'– does not fulfill the efficiency goals of a class action, which should depend on uniform, standardized proof.") With the need for individual trials on the issues of primary

---

[4] The defendant also points out that some of the plaintiffs' suggested means of proceeding might violate the defendant's Seventh Amendment right to confront witnesses. (Docket No. 111 at 21.) As other grounds already justify denying the plaintiffs' class certification motion, it is not necessary to closely examine this issue.

liability, good faith belief, and reliance not dispensed with by class treatment, it is clear that class treatment offers limited, if any, economy here.

Therefore, the plaintiffs have not demonstrated that class treatment is the superior method for the resolution of their claims. Thus, because the plaintiffs have failed to establish that either predominance or superiority exists with respect to their class claims, their case is not amenable to Rule 23(b)(3) certification.[5]

## CONCLUSION

Although the plaintiffs have demonstrated that they meet the requirements of Rule 23(a), they have not shown that their claims are appropriate for certification under Rule 23(b)(3). As such, the plaintiffs' motion for class certification will be denied.[6] The court notes that this denial of the plaintiffs' motion for class certification does not mean that the plaintiffs will ultimately be denied relief if they can prove their claims. Rather, today's ruling affects only the appropriate model for the adjudication of these claims.

---

[5] The plaintiffs have also failed to show that sub-classing would alleviate any of these problems. While the plaintiffs initially proposed two sub-classes based on the type of "opening trade," the plaintiffs have not subsequently provided any explanation for how sub-classing based on the type of opening trade would make this case any more susceptible to class treatment under Rule 23(b)(3).

[6] The defendant has moved to strike four declarations offered by the plaintiff in support of its class certification motion. (*See* Docket No. 107.) As the court will deny the plaintiffs' motion for class certification, the defendant's motion to strike will be denied as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge